IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHNNY LEE BALDWIN,

      Plaintiff,

      v.                           CASE NO.  25-3011-JWL

SALINE COUNTY JAIL, et al.,

      Defendants.

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Johnny Lee Baldwin is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

### I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Saline County Jail in Salina, Kansas ("SCJ").  The Court granted Plaintiff leave to proceed in forma pauperis.  The Court assessed an initial partial filing fee in the amount of $3.00 that is due by March 31, 2025.  The failure to submit the initial fee by the deadline may result in the dismissal of this matter without further notice.

Plaintiff alleges that officers placed him in a wrap cart on multiple occasions at the SCJ despite his broken arm and dislocated shoulders.  (Doc. 1, at 2.)  He claims he was cuffed behind his back and he told them the cuffs were too tight and his arms hurt.  *Id*.  Plaintiff claims that they left him in pain for multiple hours on three occasions.  *Id*.  Plaintiff alleges that he was "sexually exposed" in front of other inmates.  *Id*.  Plaintiff alleges that he was forced out of one restraint

chair, his clothes were cut off, and he was placed in the wrap cart on September 25, 2024 and September 26, 2024. *Id*. at 3.

Plaintiff alleges that on September 25, 2024, he was supposed to be moved because he was uncomfortable around another inmate. *Id*. at 6. Plaintiff claims that no one came to move him for six hours. *Id*. Plaintiff claims that he "went in to the restraint chair" and the next shift came in and Corporal Wallis and Captain Fruits had the deputies in booking at the SCJ force Plaintiff out of the chair and hold him down. *Id*. A deputy had his knee on Plaintiff's neck and they cut off Plaintiff's clothes while the booking door was open and other inmates could see. *Id*. They placed Plaintiff in a wrap cart and handcuffed him behind his back with the cuffs on too tight and knowing that Plaintiff's right arm was broken and his shoulders were out of place. *Id*. Plaintiff alleges that he was left like this "for several hours." *Id*. Plaintiff alleges that the nurse refused to x-ray his arm and shoulders. *Id*.

Plaintiff alleges that he was placed on suicide watch for over a month because Mental Health would not release him until he took medication. *Id*. Plaintiff alleges that Nurse Stephanie had Nurse Johnson give Plaintiff medication that made it difficult to breathe, and made him feel lightheaded and as though "a bunch of electricity [was] going through his chest." *Id*. They changed his medication. *Id*.

Plaintiff alleges that on November 8, 2024, while Corporal Hill and Deputy Leazor escorted Plaintiff to the clinic, Plaintiff informed them that he was not suicidal and that if they put him on suicide watch Plaintiff was going to scratch Plaintiff's face. *Id*. at 7. Corporal Hill said Plaintiff was going on suicide watch and told the deputies to get the wrap cart. *Id*. They placed Plaintiff in the wrap cart knowing his arm was broken and his shoulders were out-of-socket. *Id*. They left him in the wrap cart for hours. *Id*.

Plaintiff alleges that on December 1, 2024, Deputy Smith was watching another inmate shower, and when Plaintiff told Corporal Palmer about it, Palmer decided to put Plaintiff in the wrap cart and deputies came into Plaintiff's cell and tackled him. *Id.* Corporal Palmer pepper-sprayed Plaintiff from about five inches from his face and yanked Plaintiff's smock off his waist "sexually exposing [him]." *Id.* Plaintiff alleges that he was placed in the wrap cart naked while other inmates were at the door watching. *Id.*

Plaintiff alleges that mental health nurses at the SCJ refused to provide Plaintiff with x-rays of his broken arm and out-of-socket shoulders, and states that he was only given Tylenol. *Id.* at 2, 8. Plaintiff alleges that the nurse indicated his arm was not broken. *Id.* at 8. Plaintiff told her that he had x-rays from KU Ortho in Lawrence, Kansas, showing that his arm is broken and he was supposed to get surgery. *Id.* at 8–9. Plaintiff claims that "the jail" refused to get the x-rays from KU Ortho and refused to take Plaintiff to his appointment. *Id.* at 9. Plaintiff alleges that he is in non-stop pain. *Id.*

Plaintiff alleges that "they" threw away the care package Plaintiff's dad bought when they placed him on suicide watch on November 8, 2024. *Id.* Plaintiff alleges that he was placed in a cell with feces on the corner of the wall while he was on suicide watch from November 8 until December 22, 2024. *Id.* at 10. Plaintiff alleges that while on suicide watch he only received six sheets of toilet paper at a time. *Id.* Plaintiff alleges that although they check on him every 15 minutes, one time he had to wait six hours for more toilet paper. *Id.*

Plaintiff alleges that the SCJ finally got the x-rays from Kansas Ortho in January 2025, and took another x-ray on January 13, 2025. *Id.* at 12. Plaintiff alleges that the new x-ray shows that his arm is worse than when the previous x-rays were taken. *Id.* Plaintiff claims that Nurses

Stephanie, AJ Johnson, and Lou Miller, refuse to let the jail know that Plaintiff's arm is broken.[1] *Id*. at 13.  Plaintiff also alleges that he wears glasses and "they" refuse to get his eyes examined. *Id*. at 14.

On the section of the form complaint asking if Plaintiff exhausted his administrative remedies, Plaintiff marked "no" and marked "N/A" on the section directing him to explain why administrative relief was not sought.  *Id*. at 5.

Plaintiff names as defendants: the Saline County Jail; (fnu) Wallis, Corporal at SCJ; (fnu) Fruits, Captain at SCJ; (fnu) (lnu) Sherriff at SCJ; (fnu) Hill, Corporal at SCJ; (fnu) Palmer, Corporal at SCJ; and (fnu) (lnu) (2) Mental Health Nurses at the SCJ.  His request for relief includes:  release; a settlement for emotional distress and pain; and surgery on his right arm and both shoulders "along with $200,000 for trauma and pain." *Id*. at 5.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court

---

[1]  None of these nurses have been named as defendants.

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Rule 8

Plaintiff uses the Court-approved form for filing a § 1983 action, but attaches multiple handwritten pages. He has also filed an exhibit (Doc. 4) and a supplement (Doc. 5) that include definitions of various words.

In filing an amended complaint, Plaintiff must comply with Fed. R. Civ. P. 8's pleading standards. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's Complaint fails to comply with this rule. "It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis. Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

## 2. Defendants

Plaintiff names the SCJ as a defendant. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 71 (1989); *Clark v. Anderson*, No. 09-3141-SAC, 2009 WL 2355501, at *1 (D. Kan. July 29, 2009); *see also Aston v. Cunningham*, No. 99–4156, 2000 WL 796086 at *4 n.3 (10th Cir. Jun. 21, 2000) ("a detention facility is not a person or legally created entity capable of being sued"); *Busekros v. Iscon*, No. 95-3277-GTV, 1995 WL 462241, at *1 (D. Kan. July 18, 1995) ("[T]he Reno County Jail must be dismissed, as a jail is not a 'person' within the meaning of § 1983."). Plaintiff's claims against the SCJ are subject to dismissal.

Plaintiff also names the Sheriff as a defendant but fails to mention the Sheriff in the body of his Complaint. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation

omitted)).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision."  *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).  Plaintiff's claims against the Sheriff are subject to dismissal.

### 2.  Medical Care and Excessive Force

Plaintiff alleges that he was denied proper medical care and that staff used excessive force in restraining him.  The Court held in *Kingsley* held that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee

can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, ___ F.3d ___, 2020 WL 5509683, at *3 (10th Cir. Sept. 14, 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.")

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id.* at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata*

*v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Plaintiff must show that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

If Plaintiff submits an amended complaint, he should include information on who was involved from the SCJ. Plaintiff names Mental Health Nurses as defendants but does not give their names. He also names nurses in the body of his Complaint, but they are not named defendants.

Plaintiff also references "deputies," "officers," and "nurses," and makes statements that "they" did a certain act. An assertion of collective responsibility fails to adequately allege a claim for relief against a specific defendant or to show personal responsibility by an individual defendant. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249–50 (10th Cir. 2020) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). A plaintiff alleging civil rights violations must "isolate the allegedly unconstitutional acts of each defendant" such that his allegations "provide adequate notice as to the nature of the claims against each" defendant. *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Allegations that a plaintiff's "rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations" are insufficient to support § 1983 claims. *Pahls*, 718 F.3d at 1228 (citations omitted). The Court is granting Plaintiff an opportunity to file an amended complaint to cure these deficiencies.

### 3. Conditions of Confinement

Plaintiff alleges that there was feces on the wall in the corner of his cell, and that he was only given six sheets of toilet paper at a time while on suicide watch. A prison official violates the Eighth Amendment when two requirements are met.[2] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

---

[2] The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff has also failed to allege deliberate indifference by any defendant. Plaintiff should show good cause why this claim should not be dismissed.

### 4. Relief Requested

Plaintiff seeks release in his request for relief.  Such a challenge must be brought in a habeas action.  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief).  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). Therefore, any claim seeking release from imprisonment is not cognizable in a § 1983 action.

The failure to allege a physical injury bars a plaintiff from receiving compensatory damages under 42 U.S.C. § 1997e(e).  Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted."  *Searles v. Van Bebber*, 251 F.3d

869, 876 (10th Cir. 2001). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id*. (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).

   **5. Exhaustion**

   Plaintiff indicates that he has not exhausted his administrative remedies prior to filing this action. An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

   This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's

regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the

reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3011-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 25, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **April 25, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated March 25, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**